**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 05-23294-CIV-UNGARO-BENAGES

HOULIHAN LOKEY HOWARD &
ZUKIN CAPITAL, INC.,

      Plaintiff,

v.

THE PROTECTIVE GROUP, INC.,

      Defendant.

_____/

**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE is before the Court upon Defendant's Motion for Final Summary

Judgment. DE 52. Also before the Court is Plaintiff's Motion for Summary Judgment. DE 71.

The Court has considered the Motions and is otherwise fully advised in the premises.

**Facts**

On July 2, 2004, the parties entered into a written agreement ("Agreement") for Plaintiff

to provide financial advisory and investment banking services in connection with a sale or

acquisition transaction involving the Defendant. *See* DE 94 (Pretrial Stip.) at 5.A; DE 52 (Def.'s

Motion), Ex. "B" (Agreement) at 1. The Agreement is governed by New York law and provides

in pertinent part:

> This Agreement shall have an initial term of six (6) months, and thereafter shall
> be extended on a month-to-month basis upon the mutual written agreement of the parties;
> provided, however, that no expiration or termination of this Agreement shall affect . . .
> [Plaintiff's] right to receive, and [Defendant's] obligation to pay, any and all fees and
> expenses due, and whether or not any Transaction shall be consummated prior to or

1

subsequent to the effective date of termination, all as more fully set forth in this Agreement.  During the initial six-month term of this Agreement, the Agreement may be terminated at any time by either party upon thirty days' prior written notice to the other party.[1]

*** 

  If this Agreement is terminated by [Defendant] for any reason, and [Defendant] consummates, or enters into an agreement in principle to engage in (and which subsequently closes), a Transaction within 12 months after such termination date with any party which (i) Houlihan Lokey identified, contacted or with whom [Plaintiff] or [Defendant] had discussions regarding a potential Transaction during the term of this agreement, or (ii) reviewed the information memorandum or any other written materials prepared by [Plaintiff] concerning [Defendant] and/or the proposed Transaction, [Plaintiff] shall be entitled to receive its Transaction Fee upon the consummation of such Transaction as if no such termination had occurred.[2]

DE 52 (Def.'s Motion), Ex. "B" (Agreement) at 2 (para. 2), 3 (para. 2), 6 (para. 3) (providing that the Agreement shall be governed by the laws of New York).

  The Agreement was not extended beyond its initial six-month term, which ended on January 2, 2005.  *See* DE 94 (Pretrial Stip.) at 5.G; DE 52 (Def.'s Motion) at para. 19; DE 83 (Pl.'s Resp.) at para. 19.  On or about March 25, 2005, Defendant's sole shareholder (Melvin Miller) sold his ownership interest in Defendant to The Exxel Group, S.A. ("Exxel").  *See* DE 52 (Def.'s Motion) at para. 27; DE 83 (Pl.'s Resp.) at para. 27; DE 94 (Pretrial Stip.) at 5.D-E. Defendant did not pay Plaintiff a transaction fee ("Transaction Fee") in connection with this sale. *See* DE 94 (Pretrial Stip.) at 5.J.  Plaintiff claims entitlement to a Transaction Fee, which it calculates as exceeding $5,000,000.  *See* DE 52 (Def.'s Motion), Ex. "J" (Compl.); DE 94

---

[1] Defendant refers to this paragraph as the Agreement's "preservation of rights" provision.  *See* DE 52 (Def.'s Motion) at paras. 41-45.

[2] The parties refer to this paragraph as the Agreement's "tail" provision.  *See* DE 52 (Def.'s Motion) at paras. 51-52; DE 83 (Pl.'s Resp.) at 4-5.

(Pretrial Stip.) at 1.[3]

Plaintiff filed this action on May 16, 2005, in the Southern District of New York.  *See* DE

1 (Order Transferring Case) at 16 (Docket Sheet).[4]  Thereafter, the action was transferred to this

Court pursuant to 28 U.S.C. § 1404(a).  *Id*. at 1, 14.  The Complaint contains counts for breach of

contract (Count I), declaratory relief (Count II), and unjust enrichment (Count III).  *See* DE 52

(Def.'s Motion), Ex. "J" (Compl.).  Plaintiff requests: (1) a judgment finding that Defendant

breached the Agreement; (2) a declaratory judgment that Plaintiff is entitled to the Transaction

Fee pursuant to the Agreement; (3) a judgment finding that Defendant unjustly enriched itself at

Plaintiff's expense; (4) actual damages, pre-judgment interest, costs, expenses and attorney's

fees; and, (5) any other and further relief deemed just and appropriate.  *Id*.

**a. Defendant's Motion**

Defendant argues that Plaintiff has no right to a fee pursuant to the expired Agreement,

and that the Agreement's "tail" provision does not entitle Plaintiff to a fee.  *See* DE 52 (Def.'s

Motion) at para. 31.  Defendant's position is that the Agreement expired on January 2, 2005,

when it was not extended beyond its initial six-month term.  *Id*. at paras. 20-21, 32.  Thus,

Defendant submits that "[t]he only issue for this Court's analysis is whether the Agreement

entitles [Plaintiff] to a fee if the Agreement expires."  *Id*. at para. 32.  In this regard, anticipating

an argument from Plaintiff that the Agreement did not expire, but that it was terminated by

---

[3] Under the Agreement, Plaintiff was entitled to–and Defendant paid–a $50,000 retainer fee, as well as accrued expenses as of January 2, 2005.  *See* DE 52 (Def.'s Motion), Ex. "B" (Agreement) at 2 (para. 3); DE 94 (Pretrial Stip.) at 5.K.

[4] Subject matter jurisdiction is predicated on 28 U.S.C. § 1332.  *See* DE 94 (Pretrial Stip.) at 2.

Defendant's alleged breach prior to the Agreement's expiration, Defendant submits that the "election of remedies" doctrine would bar Plaintiff from making such an argument. *Id*. at para. 33.[5]  Specifically, Defendant submits that subsequent to any alleged breach,[6] Plaintiff "made a binding decision to continue the contract and treat it as subsisting", never notifying Defendant that it was in breach of the Agreement. *Id*. at paras. 33-34.  Thus, even assuming that Defendant breached the Agreement as Plaintiff contends, Defendant maintains that the Agreement expired according to its terms because Plaintiff continued to perform and did not provide notice to Defendant about the alleged breach. *See* DE 52 (Def.'s Motion) at para. 40.

Further, in addressing Plaintiff's right to the Transaction Fee, Defendant points to the Agreement's "preservation of rights" and "tail" provisions. *See* ns. 1-2, *supra*; DE 52 (Def.'s Motion) at paras. 41-53.  With respect to the "preservation of rights" provision, Defendant

_____

[5] The "election of remedies" doctrine provides as follows:

> When a party materially breaches a contract, the non-breaching party must choose between two remedies-[it] can elect to terminate the contract and recover liquidated damages or [it] can continue the contract and recover damages solely for the breach.  A party can indicate that [it] has chosen to continue the contract by continuing to perform under the contract or by accepting the performance of the breaching party.  Once a party elects to continue the contract, [it] can never thereafter elect to terminate the contract based on that breach, although [it] retains the option of terminating the contract based on other, subsequent breaches.

*ESPN, Inc. v. Office of Com'r of Baseball*, 76 F. Supp. 2d 383, 387-88 (S.D.N.Y. 1999) (quoting *Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1011-12 (S.D.N.Y. 1995)).  Further, in accordance with the doctrine, "[a] party cannot elect to continue with the contract, continue to receive benefits from it, and thereafter bring an action for rescission or total breach." *Id*. at 392 (internal quotation marks and citation omitted).

[6] According to Defendant, the only breach Plaintiff alleges is that Defendant did not allow Plaintiff to participate in the negotiations with Exxel. *Id*. at para. 34 (quoting Compl. at para. 23).

4

maintains that "[it] only entitles [Plaintiff] to fees and expenses that are 'due' at the time of the Agreement's 'expiration or termination.'"  DE 52 (Def.'s Motion) at para. 44.  Defendant's position is that "in the event of an expiration, [Defendant] is only obligated to pay any fee 'due' at the time the Agreement expires/terminates and reimburse [Plaintiff] for out-of-pocket expenses [Plaintiff] incurred during the Agreement's term."  *Id*. at para. 45.  With respect to the "tail" provision, Defendant's position is that it created a right for Plaintiff to recover a commission (*i.e.*, the Transaction Fee) if a transaction was consummated within twelve months of Defendant's termination of the Agreement.  *Id*. at para. 52.  According to Defendant, the "tail" provision is inapplicable herein because the Agreement expired by its own terms (*i.e.*, it was not terminated by Defendant).  *Id*.  Defendant adds that under New York law, "tail" provisions in brokerage contracts are strictly construed, that the Agreement must be enforced pursuant to its clear and unambiguous terms, and that any ambiguities must be construed against Plaintiff as the drafting party.  *Id*. at paras. 54-60.

With respect to Plaintiff's claim for unjust enrichment (Count III), Defendant submits that it is barred by the New York statute of frauds.  *Id*. at paras. 61-64.  Further, Defendant submits that the existence of the Agreement bars Plaintiff from seeking relief under an unjust enrichment theory of relief.  *Id*. at paras. 65-68.

**b. Plaintiff's Response**

In response to Defendant's argument that the Agreement expired by its own terms, rather than it being terminated by Defendant, Plaintiff submits that "[t]his hyper-technical excuse finds no support in the letter or spirit of the Exclusive Agreement, in any dictionary, or in the law of New York."  DE 83 (Pl.'s Resp.) at 6.  First, Plaintiff points to the "preservation of rights"

provision, which states in pertinent part that "no expiration or termination of this Agreement shall affect . . . [Plaintiff's] right to receive, and [Defendant's] obligation to pay, any and all fees and expenses due, and whether or not any Transaction shall be consummated prior to or subsequent to the effective date of termination, all as more fully set forth in this Agreement." *Id*. (citing Agreement at 2 (para. 2)) (emphasis added).  Plaintiff submits that the word "expiration" encompasses "termination" and vice-versa. *Id*. (citing Black's Law Dictionary).  According to Plaintiff, both words mean "end", and "[t]he undisputed facts show that the initial term of the Exclusive Agreement came to an 'end' when it was not renewed." *Id*.  Plaintiff adds that "[t]his 'end' [*i.e.*, the non-renewal] was both an 'expiration' and a 'termination' of the initial term." *Id*.

Plaintiff also cites two cases construing the words "expiration" and "termination", or variations thereof, within the context of a covenant not to compete contained in the licensing agreement for Carvel ice cream stores. *Id*. at 6-8 (citing *Carvel Corp. v. Eisenberg*, 692 F. Supp. 182 (S.D.N.Y. 1988); *Carvel Corp. v. Rait*, 503 N.Y.S. 2d 406 (N.Y. App. Div. 2d Dept. 1986)).[7]

---

[7] The clause at issue in both *Carvel* cases provided as follows:

> To prevent dilution of the exclusivity of the valuable Carvel know-how and Carvel trade secrets to be acquired by Licensee hereunder, it is agreed as part of the consideration to, and inducement for, Licensor entering into this Agreement, that in the event Licensee sells the Carvel Store or abandons the Carvel Store provided in this License, or in the event this License is *terminated for any reason* except for Licensor's breach, then for a period of three (3) years next following such event Licensee shall not directly or indirectly engage in whole or in part in the production, distribution or sale of ice cream or other frozen deserts whether as proprietor, employee, officer, director, agent, joint venturer, partner or other capacity whatsoever, within a radius of two (2) miles of the site of the within Carvel Store.  The provisions of this paragraph shall survive *termination,* abandonment or other cancellation of the Agreement.

*Eisenberg*, 692 F. Supp. at 184 (emphasis added by the *Eisenberg* court); *Rait*, 503 N.Y.S. 2d at 408.

In each case, Carvel sought to enjoin the defendant from continuing to operate an ice cream store in violation of the restrictive covenant. *See Eisenberg*, 692 F. Supp. at 184; *Rait*, 503 N.Y.S. 2d at 408. The defendants argued in their respective cases that the covenants were inapplicable to them because their licenses "expired" rather than "terminated". *Id.* The *Eisenberg* court granted Carvel's motion for summary judgment, concluding that "the parties intended the agreement to apply in the event of termination by expiration as well as by any other form of termination." *Eisenberg*, 692 F. Supp. at 184. In reaching this conclusion, the *Eisenberg* court quoted the following language from *Rait*:

> It is true, as the defendant notes, that the words 'termination' and 'expiration', or forms thereof, appear in several contexts throughout the agreement. For example, Carvel was entitled to terminate its licensee's rights under the contract in the event of a breach by the latter. Also, the contract expressly provided that in the event of 'expiration, cancellation or termination', Carvel was entitled to immediate possession of its property and prompt payment by the licensee of all open accounts. In these contexts, it might be argued that the use of the word 'termination' was intended to describe an end of the agreement's existence occurring prior to the time fixed by the parties at its inception. However, another clause of the agreement provided that the licensee was to discontinue use of the Carvel name, trademarks and know-how upon 'expiration or any earlier termination' of the agreement, and it can be inferred from these words that the parties understood 'expiration' to be but a form of 'termination.' In the covenant not to compete, the stated purpose of which was to 'prevent dilution of the exclusivity of the valuable Carvel know-how and Carvel secrets to be acquired,' the licensee agreed to refrain from competing with the prescribed geographical area for a period of three years after the 'license is terminated for any reason except for Licensor's breach', and the covenant was to survive 'termination, abandonment or other cancellation' of the agreement. The foregoing language evinces an understanding by the parties that the covenant would apply in the event of any termination of their agreement (other than one brought about by Carvel's breach). The parties further understood that the language was to include the expiration of the agreement at the end of its stated term. Indeed, as noted by Special Term, Webster's New Collegiate Dictionary (1974), defines the word 'expiration', in part, as a 'termination'. Moreover, bearing in mind that we must seek to construe the words utilized by the parties so as to effectuate their probable intent, we find, as did Special Term, that this interpretation is consistent with the purpose of the covenant and other provisions of the agreement: to protect Carvel's name, know-how and trade secrets once its relationship with its licensee had been severed. We can perceive no basis for

7

> concluding that the parties intended to provide Carvel with less protection from
> competition or dilution of its name in the event of expiration than in the event of some
> earlier termination of the license agreement.

*Eisenberg*, 692 F. Supp. at 185 (quoting *Rait*, 503 N.Y.S. 2d at 410).

Plaintiff argues that the same principles upon which the *Carvel* decisions are based apply in this case, as the Agreement "contains virtually identical triggering language (*i.e.* the tail period applies after the 'Agreement is terminated by [Defendant] for any reason')." DE 83 (Pl.'s Resp.) at 7. Specifically, Plaintiff notes that, as recognized in the *Carvel* cases, "'expiration' is but one form of 'termination'." *Id.* Further, Plaintiff likens the language at issue in the *Carvel* cases with the Agreement's "preservation of rights" provision (*i.e.*, "no expiration or termination of this Agreement . . .") in that it is used to describe an event concluding the relationship of the parties. *Id.* at 7-8. Finally, with respect to the purpose of the Agreement's "tail" provision, Plaintiff argues that "unless the tail provision applies upon 'expiration,' clients like [Defendant] could avoid paying the Transaction fee merely by waiting until after the initial term ended to close on an imminent transaction." *Id.* at 8. According to Plaintiff, "such a construction of the Exclusive Agreement would be absurd and defeat the self-evident purpose of the tail provision." *Id.*

As to Defendant's "election of remedies" argument, Plaintiff submits that this is an affirmative defense that Defendant failed to plead in its answer and therefore, was waived. *Id.* at 9. Further, Plaintiff submits that the "election of remedies" doctrine is inapplicable herein because at the time of the alleged non-payment of the Transaction Fee, no further performance was required from Plaintiff; Defendant's sale had occurred. *Id.* at 10. Thus, Plaintiff submits that because it could not, post-sale, opt to continue performing under the contract or refuse to

8

continue, "election of remedies" is inapplicable.  *Id*.  Moreover, Plaintiff maintains that it elected to continue its performance under the Agreement, even after learning about the Exxel negotiations, and that it never treated the Agreement as terminated.  *Id*. at 11.  Thus, Plaintiff submits that its decision to continue its performance is consistent with the remedy it seeks: to enforce the Agreement and collect the Transaction Fee once it became due.  *Id*. at 11-12.

With respect to Defendant's statute of frauds argument, Plaintiff also submits that Defendant waived the same, as the statute of frauds is an affirmative defense that Defendant did not plead.  *Id*. at 12.  Plaintiff adds that in any event, the statute of frauds argument is inapplicable because in this case there was a writing, the Agreement, which satisfies statute of frauds requirements.  *Id*.

Finally, with respect to Defendant's argument that the existence of the Agreement bars Plaintiff's claim for unjust enrichment, Plaintiff submits that New York recognizes an exception to this general rule where the defendant frustrates plaintiff's performance of the contract.  *Id*. at 13.  In this regard, Plaintiff submits that Defendant frustrated Plaintiff's performance of the Agreement by excluding Plaintiff from its negotiations with Exxel and not providing complete information concerning its contacts with Exxel and details about the transaction.  *Id*.  Thus, Plaintiff submits that its claim for unjust enrichment is proper and should be determined by the trier of fact.  *Id*. at 14.

**<u>Standard of Review</u>**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden to establish the basis for the motion and to point to the record and show an absence of a genuine issue of material fact. *See Hickson Corp. v. Northern Crossarm Co., Inc.,* 357 F.3d 1256, 1260 (11th Cir. 2004) (also stating (at 1259), that: "[a]n issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case."). Once a movant satisfies its burden, the nonmoving party bearing the ultimate burden of proof at trial must come forward with evidence sufficient to withstand a directed verdict motion." *Id* at 1260. A court must consider the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party. *See Hairston v. Gainsville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). Nevertheless, Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

In this case the parties maintain–and as more fully set forth below, the Court agrees–that the contractual language at issue is unambiguous. *See* DE 52 (Def.'s Motion) at para. 60; DE 83 (Pl.'s Resp.) at 5-6. Thus, the matter is proper for adjudication under Fed. R. Civ. P. 56. *See Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002); *Bolt Elec., Inc. v. City of New York*, 223 F.3d 146, 150 (2d Cir. 2000). "In reviewing a written contract, the Court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to

use." *Id*.  "If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself."  *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999); *Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 647 N.E.2d 1298, 1302 (N.Y. 1995) (stating: "[t]he court's role is limited to interpretation and enforcement of the terms agreed to by the parties; it does not include the rewriting of their contract and the imposition of additional terms.") (citation omitted); *Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004) (noting that "'when parties set down their agreement in a clear, complete document, their writing should ... be enforced according to its terms.'") (quoting *W.W.W. Associates, Inc. v. Giancontieri*, 566 N.E. 2d 639, 642 (N.Y. 1990)).  This is especially the case where as here, the contract at issue was negotiated and drafted by the experienced personnel and counsel of two sophisticated parties.  *See* DE 89 (Reply), Ex. "A" (Antenucci Decl.) at paras. 1, 3-5; *Civil Service Employees Ass'n, Inc. v. Plainedge Union Free School Dist.*, 786 N.Y.S.2d 59, 61 (N.Y. App. Div. 2d Dept. 2004) (citing *425 Fifth Ave. Realty Associates v. Yeshiva University*, 643 N.Y.S.2d 542 (N.Y. App. Div. 1st Dept. 1996)).

## <u>Analysis</u>

Again, the language at issue provides as follows:

> This Agreement shall have an initial term of six (6) months, and thereafter shall be extended on a month-to-month basis upon the mutual written agreement of the parties; <u>provided, however,</u> that **no expiration or termination** of this Agreement shall affect (a) [Defendant's] indemnification, reimbursement, contribution and other obligations as set forth on Schedule A attached hereto, (b) the confidentiality provisions set forth herein and Sections 5-8 hereof, and (c) [Plaintiff's] right to receive, and [Defendant's] obligation to

pay, any and all fees and expenses due, and whether or not any Transaction shall be consummated prior to or subsequent to the effective date of termination, **all as more fully set forth in this Agreement**.  During the initial six-month term of this Agreement, the Agreement may be terminated at any time by either party upon thirty days' prior written notice to the other party.

***

      **If this Agreement is terminated by [Defendant] for any reason**, and [Defendant] consummates, or enters into an agreement in principle to engage in (and which subsequently closes), a Transaction within 12 months after such termination date with any party which (i) Houlihan Lokey identified, contacted or with whom [Plaintiff] or [Defendant] had discussions regarding a potential Transaction during the term of this agreement, or (ii) reviewed the information memorandum or any other written materials prepared by [Plaintiff] concerning [Defendant] and/or the proposed Transaction, [Plaintiff] shall be entitled to receive its Transaction Fee upon the consummation of such Transaction **as if no such termination had occurred**.

DE 52 (Def.'s Motion), Ex. "B" (Agreement) at 2 (para. 2), 3 (para. 2) (emphasis added).  To be clear, these two paragraphs appear in different sections of the Agreement; the first paragraph (*i.e.*, the "preservation of rights" provision), in the "Engagement; Services; Term" section, and the second paragraph (*i.e.*, the "tail" provision), in the "Fees and Expenses" section.  *Id*.

      Plaintiff submits that the word "expiration" encompasses "termination" and vice versa.  Thus, Plaintiff points to the "no expiration or termination" language in the "preservation of rights" provision for the proposition that the word "terminated" in the "tail" provision encompasses the Agreement's expiration.  However, the word "terminated" in the "tail" provision does not appear in isolation; the phrase reads "If this Agreement is terminated **by [Defendant]** for any reason . . . ."  This distinguishes this case from the *Carvel* analyses, and the Court is not persuaded that in the context herein, the word "terminated" encompasses the Agreement's expiration.  Rather, a plain reading of the phrase reflects the intent and purpose to protect Plaintiff given the potential that Defendant might (*i.e.*, the clause begins with the word

"If"), in accordance with the last sentence of the "preservation of rights" provision, terminate the Agreement during its initial six-month term.  Only a strained construction could import "expiration", or a variation thereof, into the language at issue (*e.g.*, "If this Agreement is *expired* by [Defendant] for any reason . . . .).  Indeed, for Plaintiff's argument to work, the Court would be forced to disregard the specific language that the parties, after negotiation and assistance from counsel, included in the "tail" provision, and construe the language as implying what it does not expressly state.  The Court is reluctant do that.  *See, e.g., Greenfield v. Philles Records, Inc.*, 780 N.E. 2d 166, 171 (N.Y. 2002) (noting that "if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity"); *Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 807 N.E. 2d 876, 879 (N.Y. 2004) (stating, in the context of a lease termination dispute, that "courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include.") (quotation marks and citation omitted); *Reiss v. Financial Performance Corp.*, 764 N.E. 2d 958, 961 (N.Y. 2001) (construing *Haines v. City of New York*, 41 N.Y. 2d 769 (N.Y. 1977), as standing for the proposition that "this Court will not imply a term where the circumstances surrounding the formation of the contract indicate that the parties, when the contract was made, must have foreseen the contingency at issue and the agreement can be enforced according to its terms."); *Ackerman v. Dobbs*, 580 N.Y.S. 2d 793, 795 (N.Y. App. Div. 2d Dept. 1992) (noting that the plaintiffs were bound by the terms of their agreement in holding that no real estate brokerage commission was due to the plaintiffs where the tail provision contained in the parties' agreement indicated that the broker was entitled to a commission only if the property was sold to a person that had been "shown" the property during

13

the term of the agreement.).

In making this determination, the Court has reviewed the Agreement as a whole and considered Plaintiff's suggestion that the language of the "preservation of rights" provision (*i.e.*, "no expiration or termination . . . .") controls the construction of the language contained in the "tail" provision.  But contract construction principles compel the opposite result, as "specific and exact terms are given greater weight than general language."  *Aramony v. United Way of America*, 254 F.3d 403, 413 (2d Cir. 2001) (quoting Restatement (Second) of Contracts § 203(c) (1981)); *John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co.*, 717 F.2d 664, 669 n.8 (2d Cir. 1983) (noting that "New York law recognizes that definitive, particularized contract language takes precedence over expressions of intent that are general, summary, or preliminary."); *also Bank of Tokyo-Mitsubishi, Ltd. v. Kvaerner a.s.*, 671 N.Y.S. 2d 905, 910 (N.Y. App. Div. 1st Dept. 1998) (stating that "the clause relied upon by plaintiff is one of merely general application and, pursuant to a countervailing rule of contract construction, if there is an inconsistency between a general provision and a specific provision of a contract, the specific provision controls.").  As noted above, the "preservation of rights" provision is part of the "Engagement; Services; Term" section of the Agreement; the provision is general and preliminary insofar as it refers to subsequent sections of the Agreement for Defendant's specific obligations to, *inter alia*, pay Plaintiff's fees and expenses.  *See* DE 52 (Def.'s Motion), Ex. "B" (Agreement) at 2 (para. 2) (outlining Defendant's various obligations, "all as more fully set forth in this Agreement.").  In contrast, the "tail" provision is part of the "Fees and Expenses" section, which is, by its terms, specifically intended to cover Defendant's payment obligations in the event of a "termination".  Thus, the language of the "tail" provision takes precedence herein.

14

The Court acknowledges that under its construction of the Agreement, Plaintiff could only earn a transaction fee in the absence of the Agreement being terminated by the Defendant, if a sale or acquisition transaction contemplated by the Agreement was consummated within the initial six month term–an occurrence which may have been unlikely considering the size, nature and complexity of the contemplated transactions.  However, this is the bargain Plaintiff struck; and, from Defendant's point of view, an incentive for Plaintiff to work quickly.  Moreover, the Court notes that Plaintiff did receive $50,000 (*i.e.*, the non-refundable retainer) plus expenses for its work during the initial term.  Of course, the non-refundable nature of the retainer meant that Plaintiff could keep this money even if its efforts were ultimately unfruitful; this is a risk Defendant assumed.  Thus, the Court does not consider its interpretation of the Agreement unreasonable.[8]

Finally, Plaintiff's suggestion that the Agreement was terminated by Defendant when it failed to extend the initial term is without any merit.  *See* DE 83 (Pl.'s Resp.) at 6 n.5.  Once the initial term of the Agreement ended, an extension on a month-to-month basis required the parties' mutual written agreement.  *See* DE 94 (Pretrial Stip.) at 5.B.  That Defendant did not agree to *an extension* does not mean that it *terminated* the Agreement.

Therefore, in accordance with the foregoing analysis, the Court finds that Defendant is entitled to summary judgment with respect to Plaintiff's claims for breach of contract (Count I),

---

[8] Although not a part of the Court's analysis of the Agreement, the Court notes that Plaintiff has included language in its agreements with other parties that would have protected Plaintiff under the facts of this case.  *See* DE 113 (Sealed Documents) (providing in their "tail" clauses in pertinent part: "[i]f this Agreement expires or is terminated for any reason . . . ."; "[i]f this Agreement expires or is terminated by the Company . . . .").

and declaratory judgment (Count II).  Consistent with these findings, the Court need not address Defendant's "election of remedies" argument.

As to Plaintiff's claim for unjust enrichment, the Court agrees with Plaintiff that under the facts of this case, the claim is not precluded by the parties' Agreement.[9]  It is true that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 516 N.E. 2d 190, 193 (N.Y. 1987) (citations omitted).  But an exception to this general rule provides that "a party may assert causes of action in both breach of contract and quasi-contract . . . where one party wrongfully has prevented the other from performing the contract." *Randall v. Guido*, 655 N.Y.S. 2d 527, 528 (N.Y. App. Div. 1st Dept. 1997); *also Curtis Properties Corp. v. Greif Companies*, 653 N.Y.S. 2d 569, 571 (N.Y. App. Div. 1st Dept. 1997); *Abinet v. Mediavilla*, 169 N.Y.S. 2d 231, 232-33

---

[9] The Court also accepts the parties' position that the unjust enrichment claim is governed by New York substantive law.  *See* DE 94 (Pretrial Stip.) at 7.  The Agreement provides in pertinent part that it "**SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO SUCH STATE'S RULES CONCERNING CONFLICTS OF LAWS.**"  *See* DE 52 (Def.'s Motion), Ex. "B" (Agreement) at 6 (para. 3) (emphasis in original).  It is unclear that this narrow language would suffice for a determination that the extra-contractual unjust enrichment claim is governed by New York law.  *See, e.g., Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*, 414 F.3d 325, 333-36 (2d Cir. 2005).  Nonetheless, as this case was transferred from the Southern District of New York pursuant to 28 U.S.C. § 1404(a), the Court must follow the choice of law principles binding the transferring Court (*i.e.*, New York choice of law principles).  *See Ferens v. John Deere Co.*, 494 U.S. 516 (1990); *Van Dusen v. Barrack*, 376 U.S. 612 (1964).  And, because the parties agree that New York substantive law applies to the unjust enrichment claim, a choice of law inquiry is not required.  *See American Fuel Corporation v. Utah Energy Development Company, Inc.*, 122 F.3d 130, 134 (2d Cir. 1997).

(N.Y. App. Div. 2d Dept. 1957).[10]

Plaintiff maintains that Defendant frustrated its performance of the Agreement[11] by purposely excluding it from the Exxel negotiations and not furnishing it with complete information about the potential transaction. *See* DE 83 (Pl.'s Resp.) at 13.  Plaintiff's position has support in the record and pertinent case law. *See* DE 94 (Pretrial Stip.) at 5.E-F; DE 73 (Pl.'s Stmt. of Mat. Facts) at paras. 10-21; DE 95 (Def.'s Resp.) at paras. 10-21; *Curtis Properties Corp. v. Greif Companies*, 628 N.Y.S. 2d 628, 631 (N.Y. App. Div. 1st Dept. 1995) (stating that "[a]s a matter of law, having entered into an agreement under which the broker's compensation is conditioned on its right to represent defendants' interests with a third party, defendants are precluded from taking any action which would defeat that condition.").  Defendant refers to Plaintiff's inartful incorporation of its breach of contract allegations into its unjust enrichment claim as contradictory to Plaintiff's position that Defendant frustrated its performance under the Agreement. *See* Compl. at paras. 21, 37 (alleging that "[Plaintiff] fully performed its obligations

_____

[10] The Court notes that Florida does not seem to recognize such an exception; once an express contract is shown to exist, a quasi-contract claim fails. *See Thunderwave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997) (citing cases for this proposition); *Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., Inc.*, 695 So.2d 383, 385-87 (Fla. 4th Dist. Ct. App. 1997) (outlining the principles of implied contracts).

[11] The Agreement provides in pertinent part:

[Defendant] agrees that neither it, nor its controlling equity holders or other affiliates, nor its management, will initiate any discussions regarding a Transaction during the term of this Agreement, except through [Plaintiff].  In the event the Company, its controlling equity holders or affiliates, or its management receive any inquiry regarding a Transaction, [Plaintiff] will be promptly informed of such inquiry so that it can evaluate such party and its interest in a Transaction, and assist [Defendant] in any resulting negotiations.

DE 52 (Def.'s Motion), Ex. "B" (Agreement) at 2 (para. 1).

under the Agreement").  However, Defendant has known from the inception of this case that

Plaintiff alleges that "[Defendant] breached the Agreement by not allowing [it] to participate in

negotiations with Exxel regarding a potential Sale Transaction."  *Id*. at paras. 12-14, 23, 37.

Thus, Defendant has been on notice of Plaintiff's position from the beginning of this case.  *See*

*also* Fed. R. Civ. P. 8(c) (providing that "[a]ll pleadings shall be so construed as to do substantial

justice.").

      With respect to Defendant's statute of frauds argument, Plaintiff is correct in noting that

this is an affirmative defense that the Defendant has waived by failing to plead it.  *See* Fed. R.

Civ. P. 8(c); *Troxler v. Owens-Illinois, Inc.*, 717 F.2d 530, 532 (11th Cir. 1983); *also Roland v.*

*Benson*, 816 N.Y.S. 2d 190 (N.Y. App. Div. 2d Dept. 2006).  Accordingly, Defendant's Motion

is denied as to Plaintiff's claim for unjust enrichment.

**c. Plaintiff's Motion**

      Plaintiff moves for summary judgment on its breach of contract claim (Count I), as well

as Defendant's counterclaims for breach of contract and breach of fiduciary duty.  *See* DE 72

(Pl.'s Memo.) at 2, 11-12.  The Motion is denied as to Plaintiff's breach of contract claim,

consistent with the Court's determination that Defendant is entitled to summary judgement in

this regard.

      With respect to Defendant's breach of contract counterclaim,[12] Plaintiff submits that

---

[12] According to Defendant, Plaintiff breached the Agreement by: (a) failing to review
Defendant's financial condition, operations, competitive environment, prospects and related
matters; (b) failing to evaluate indications of interest by potential purchasers and their proposals;
(c) failing to assist Defendant's management in developing an acquisition plan; (d) failing to
advise Defendant as to the structure of a transaction (including the valuation of any non-cash

Defendant has failed to offer evidence of Plaintiff's alleged breach, and that in fact, Defendant

has acknowledged Plaintiff's performance under the Agreement.  *See* DE 72 (Pl.'s Memo.) at 12.

Specifically, Plaintiff maintains that "[it] fully performed its duties under the Agreement in that it

reviewed [Defendant's] financial condition, assisted [Defendant] in developing a marketing

forecast and supporting schedules, prepared an information memorandum for distribution to

interested parties, and solicited, coordinated and evaluated indications of interests and purchase

proposals."  *Id*. at 12-13.

Plaintiff also argues that there is no evidence that Defendant was damaged by Plaintiff's

alleged breach.  *Id*. at 13.  In this regard, Plaintiff notes that Exxel paid $105,000,000 for

Defendant, an offer that according to Plaintiff, Defendant was not required to accept.  *Id*.

Plaintiff submits that it presented several other offers to Defendant, ranging from $55,000,000 to

$110,000,000.  *Id*.  According to Plaintiff, "[t]here is no evidence that, by accepting the offer

presented by Exxel, [Defendant] somehow suffered damages."  *Id*.  Plaintiff argues that since

Defendant cannot show that it was damaged, it has no claim for breach of contract.  *Id*.

As to Defendant's counterclaim for breach of fiduciary duty, Plaintiff submits that there is

no evidence to support Defendant's allegation that: (1) Plaintiff placed its interests above those

of Defendant; or that (2) Plaintiff failed to advise Defendant of conflicts of interest with respect

---

consideration); and, (e) failing to act in good faith to obtain the highest available purchase price
for Defendant.  *See* Am. Countercl. at para. 55.  Defendant adds that to the extent Plaintiff
purported to perform the duties set forth in clauses (a)-(d) above, Plaintiff failed to do so
diligently, competently, and in good faith.  *Id*.  Further, Defendant alleges that as a result of
Plaintiff's breach, it did not receive the purchase price for the sale of its assets that it should have
received, and that it has been damaged by no less than $22,000,000.  *Id*. at para. 58.

to other companies it represented.  *Id*.[13]  Plaintiff notes that Defendant did not provide any factual basis for these claims in its written discovery responses and that Defendant's 30(b)(6) witness disavowed any knowledge in this regard.  *Id*. at 13-14.  In addition, Plaintiff argues that Defendant's allegations make little sense given that the Transaction Fee was tied to the amount a purchaser would pay for Defendant; the higher the value of the transaction, the greater the fee due to Plaintiff.  *Id*. at 14.

Further, Plaintiff submits that there is no legal support for the fiduciary obligation Defendant seeks to impose.  *Id*.  Plaintiff cites case law that it submits stands for the proposition that "[u]nder New York law, there is no fiduciary obligation created between an investment banker and its client acting [*sic*] unless the investment banker has the ability to control or force the client to consummate a transaction."  *Id*.  Plaintiff submits that Defendant's claim for breach of fiduciary duty fails as a matter of law because under the Agreement, Plaintiff did not have the authority to bind Defendant to any transaction.  *Id*.

Finally, Plaintiff submits that Defendant cannot show that it suffered any damages as a result of the alleged breaches.  *Id*. at 15.  According to Plaintiff, "[Defendant] simply cannot prove that it suffered any damages because the stock of its company sold to Exxel for $105,000,000 in a transaction from which [Plaintiff] was purposely excluded."  *Id*.  Therefore, Plaintiff argues that the claim fails as a matter of law.  *Id*.

---

[13] Defendant alleges that Plaintiff breached its fiduciary duties to Defendant by "placing the interests of itself and those of others prospective sellers and prospective purchasers in the industry above those of [Defendant];" and "by failing to advise [Defendant] of conflicts of interest with regard to other companies which [Plaintiff] represented."  *See* Am. Countercl. at para. 65.

d. **Defendant's Response**

In response to Plaintiff's argument as to the lack of evidence supporting Defendant's counterclaims, Defendant states that "[Plaintiff] chose no to ask Mr. Miller [Defendant's former sole shareholder] deposition questions that would serve as the basis for all the alleged deficiencies." DE 95 (Def.'s Resp.) at para. 85. According to Defendant, "Miller has filed declarations and affidavits attesting to the ways 1) [Plaintiff] breached the Agreement, 2) how [Plaintiff's] breach of the Agreement damaged [Defendant], 3) [Plaintiff] breached the fiduciary duty it owed to [Defendant], and 4) how [Plaintiff's] breach of its fiduciary duty damaged [Defendant]." *Id*. at 85. In support of its position, Defendant attaches an affidavit executed by Miller on January 15, 2007. *Id*., Ex. "B".

With respect to Plaintiff's argument that as a matter of New York law, there was no fiduciary obligation created between the parties in this case, Defendant submits that "[Plaintiff's] role included evaluating and analyzing [Defendant's] value so that [Defendant] could rely upon such evaluation and analysis in deciding whether to accept an offer." *Id*. at para. 86. According to Defendant, "[b]y performing such duties, [Plaintiff] became more than a mere 'finder', and assumed a fiduciary duty with respect to [Defendant]." *Id*. Defendant adds that under New York law, a broker is unlike a finder in that a broker "'carries a defined fiduciary duty to act in the best and more involved interests of the principal.'" *Id*. (quoting *Northeast Gen. Corp. v. Wellington Advertising, Inc.*, 624 N.E. 2d 129, 131 (N.Y. 1993) (distinguishing between the functions of finders and brokers).

Finally, Defendant cites *Sergeants Benev. Ass'n Annuity Fund v. Renck*, 796 N.Y.S. 2d 77

21

(N.Y. App. Div. 1st Dept. 2005).  *See* DE 95 (Def.'s Resp.) at para. 87.  In *Renck*, the appellate court found plaintiff's allegations sufficient to state a claim for breach of fiduciary duty, where plaintiff alleged that the defendants provided plaintiff's trustees with investment advice while holding themselves out as experienced in the field.  *Renck*, 796 N.Y.S. 2d at 79.  The plaintiff in *Renck* also alleged that its trustees did not have sophisticated knowledge on the subject matter of the advice and relied on defendants' expertise.  *Id*.  In the instant case, according to Defendant, the advice Plaintiff provided is analogous to that provided by the defendants in *Renck*.  *See* DE 95 (Def.'s Resp.) at para. 87.

### Analysis

As an initial matter, the court addresses Plaintiff's argument, submitted in its Reply, that the Court should disregard Miller's affidavit as a sham.  *See* DE 106 (Pl.'s Reply) at 5. Specifically, Plaintiff notes that it deposed Defendant's Rule 30(b)(6) witness, Eduardo Careaga, who indicated that he lacked specific knowledge about Defendant's counterclaims.  *See* DE 73 (Pl.'s Stmt. of Mat. Facts) at para. 39; DE 95 (Def.'s Resp.) at para. 39.  As previously noted, however, Defendant opposes Plaintiff's argument (*i.e.*, that the counterclaims lack evidentiary support) via Miller's January 15, 2007 affidavit.  *See* DE 95 (Def.'s Resp.), Ex. "B".  Plaintiff objects to the affidavit, arguing that it was entitled to accept the testimony of Defendant's corporate representative–who lacked knowledge of Defendant's counterclaims–as binding on Defendant.  *See* DE 106 (Pl.'s Reply) at 6-7.

It is true that Defendant had an affirmative duty to designate a knowledgeable corporate representative and to prepare the same to address the matters identified in Plaintiff's notice of

22

deposition.  *See Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*, 228 F.3d 275, 303 (3d

Cir. 2000) (citing cases examining Rule 37(d) sanctions in light of the parties' obligations under

Rule 30(b)(6)).  However, before disregarding an affidavit as a sham, there must be an

unexplained inherent inconsistency between the deposition testimony at issue and the affidavit.

*See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987).  In this case, Careaga

testified that he lacked specific knowledge about Defendant's counterclaims.  *See* DE 77, 4

(Careaga Depo. Vol. II) 209:22-210:15.  While Defendant may have failed to fulfill its

obligations under Fed. R. Civ. P. 30(b)(6), there is no inherent inconsistency between Careaga's

deposition testimony and Miller's affidavit, inasmuch as Miller does not directly contradict

Careaga's testimony, but attempts to fill the evidentiary void respecting Defendant's

counterclaims.  *See* DE 95 (Def.'s Resp.), Ex. "B".  Accordingly, the Court will consider Miller's

affidavit in assessing Plaintiff's Motion.

As to the first counterclaim, Defendant alleges that Plaintiff breached the Agreement by:

(a) failing to review Defendant's financial condition, operations, competitive
environment, prospects and related matters;

(b) failing to evaluate indications of interest by potential purchasers and their proposals;

(c) failing to assist Defendant's management in developing an acquisition plan;

(d) failing to advise Defendant as to the structure of a transaction (including the valuation
of any non-cash consideration); and,

(e) failing to act in good faith to obtain the highest available purchase price for
Defendant.

*See* Am. Countercl. at para. 55.  Defendant also alleges that to the extent Plaintiff purported to

perform the duties outlined in clauses (a)-(d) above, Plaintiff failed to do so diligently,

competently, and in good faith.  *Id.*  According to Defendant, as a result of Plaintiff's breach, it

23

did not receive the purchase price for the sale of its assets that it should have received, and that it has been damaged by no less than $22,000,000.  *Id*. at para. 58.

Defendant does not cite, and the Court has not found, any portion of the record that would satisfy Defendant's burden at this stage of the proceedings with respect to the foregoing allegations.  On the contrary, Plaintiff has pointed to specific portions of the record that support its performance under the Agreement.  *See, e.g.,* DE 73 (Pl.'s Stmt. of Mat. Facts) at para. 6; DE 95 (Def.'s Resp.) at para. 6.  As to Miller's affidavit, it stands for his belief that Defendant should have been sold at a higher price.  *See* DE 95 (Def.'s Resp.), Ex. "B" at para. 13.  There is, however, no evidentiary basis supporting Defendant's position that Plaintiff failed to act *in good faith* to obtain the highest available purchase price, or that *as a result* of Plaintiff's alleged non-performance, Defendant was damaged.  Therefore, because Defendant has failed to make a showing sufficient to establish the existence of elements essential to its case, and on which Defendant will bear the burden of proof at trial (*i.e.*, Plaintiff's breach and resulting damages), summary judgement is proper.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

As to Defendant's claim for breach of fiduciary duty, the Court agrees with Defendant that the claim is not barred as a matter of law, as the nature of the parties' relationship may have given rise to a fiduciary relationship.  Specifically, in *Sergeants Benev. Ass'n Annuity Fund v. Renck*, 796 N.Y.S. 2d 77 (N.Y. App. Div. 1st Dept. 2005), the court accepted the viability of a claim against individuals providing investment advice pursuant to an agreement, where it was alleged that the defendants held themselves out as experienced in the field, and that the plaintiffs lacked sophisticated knowledge on the subject matter of the advice and relied on the defendant's expertise.  *Id*. at 79.  In this case, the Agreement contemplates that Plaintiff would provide

investment advice in a potential Acquisition Transaction.  *See* Agreement at 1 (para. 2).  Thus, the cases Plaintiff cites (*see* DE 72 (Pl.'s Memo.) at 14)–which stand for the proposition that there is no fiduciary obligation created between an investment banker and its client unless the investment banker has the ability to control or force the client to consummate a transaction–are distinguishable.

Nevertheless, at the summary judgment stage, Defendant has pointed to nothing in the record to sustain its bare allegations that the parties were in a relationship of trust and confidence. Further, even if a fiduciary relationship could be inferred, Defendant submits nothing to support its allegation that Plaintiff breached a fiduciary duty by "placing the interests of itself and those of others prospective sellers and prospective purchasers in the industry *above those of [Defendant]*;" and "by failing to advise [Defendant] of *conflicts of interest* with regard to other companies which [Plaintiff] represented."  *See* Am. Countercl. at para. 65 (emphasis added). And of course, there is nothing to support the allegation that as a result of these alleged breaches, Defendant has been damaged in an amount no less than $22,000,000.  *Id*. at para. 66.  Thus, summary judgment in favor of Plaintiff is proper herein.  *See Hickson Corp. v. Northern Crossarm Co., Inc.,* 357 F.3d 1256, 1260 (11th Cir. 2004).

## Conclusion

In accordance with the foregoing analysis, summary judgement is granted in favor of the Defendant with respect to Plaintiff's claims for breach of contract (Count I) and for declaratory relief (Count II).  Defendant's Motion is denied with respect to Plaintiff's claim for unjust enrichment (Count III); the action shall proceed on this claim.  Further, summary judgment is

granted in favor of Plaintiff with respect to Defendant's counterclaims for breach of contract (Count I) and for breach of fiduciary duty (Count II).  Accordingly, it is

ORDERED AND ADJUDGED that Defendant's Motion (DE 52) is GRANTED in part and DENIED in part.  It is further

ORDERED AND ADJUDGED that Plaintiff's Motion (DE 71) is GRANTED in part and DENIED in part.

DONE AND ORDERED in Chambers at Miami, Florida, this 16th day of March, 2007.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record